**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2152-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

SHANE X. LITTLES, a/k/a
SHANE X WILLIAMS,

      Defendant-Appellant.

_____

Submitted May 10, 2022 – Decided June 15, 2022

Before Judges Fisher and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 08-10-1106 and Accusation No. 09-10-1047.

Joseph E. Krakora, Public Defender, attorney for appellant (Abby P. Schwartz, Designated Counsel, on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the denial of his post-conviction relief (PCR) petition. He contends his counsel was ineffective and did not advise him he would be subject to parole supervision for life (PSL) as a condition of his guilty plea. He states that he would not have pleaded guilty if he was aware of that condition. Because defendant was advised during several plea and sentencing hearings of the consequences of his guilty plea and the terms and conditions of PSL, we affirm.

Defendant was charged in a 2008 indictment with drug possession and weapons-related offenses. In 2009, he pleaded guilty to one count of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b), and to a charge in an accusation of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4).

During the 2009 plea hearing, the judge discussed the plea agreement with defendant and went through the lengthy plea forms. In doing so, she advised defendant he was subject to certain consequences under Megan's Law, one of which was "community supervision for life." The prosecutor corrected the judge, stating defendant was subject to "parole supervision for life." Defendant confirmed he understood the terms of the plea agreement, he was pleading guilty voluntarily, and he was satisfied with his counsel's representation.

A-2152-20

In 2010, the court sentenced defendant to five years in prison on each count, to run concurrently with each other and to a federal sentence defendant was serving. The court informed defendant he was subject to PSL as well as the other conditions imposed on a Megan's Law offender.

In 2014, defendant moved to withdraw the 2009 guilty pleas. At the time, defendant was in federal custody. After months of discussion between the State and defense counsel, the State consented to the application. Thereafter, defendant pleaded guilty to a second-degree weapons charge under the 2008 indictment and again to the sexual assault charge in the 2009 accusation. The State recommended a suspended sentence for five years.

During the 2014 plea hearing, the court informed defendant he was still subject to Megan's Law requirements, including PSL. Defendant responded that he understood. Defense counsel advised the court that he and defendant were in frequent communication and defendant understood "that Megan's Law reporting notification requirements and parole supervision for life is part of his sentence." Defendant confirmed he was entering into the plea agreement freely and voluntarily. The court suspended the imposition of sentence for five years.

In April 2015, the parties reconvened and agreed to vacate the December 2014 plea and enter into a third plea. Defendant appeared remotely from federal

A-2152-20

prison.  Defendant again pleaded guilty to the second-degree weapons charge and the second-degree sexual assault.  The court sentenced him to one-year non-custodial probationary terms on each offense, to run together.

During the hearing, the court and both counsel discussed PSL.  The prosecutor advised that PSL remained a condition of the plea agreement.  Defense counsel stated:

> [Defendant] and I have had extensive discussion about his obligation for the reporting and notification requirements under Megan's Law.  You know, he understood that was part of the plea in—in October of 2009 when he entered into it . . . .  We had discussions about it prior to the December 22, 2014 plea agreement, and we've also discussed it—we've actually engaged in pretty detailed written correspondence as well about the reporting notification requirements of Megan's Law.
>
> . . . .
>
> Before the—the plea in December of last year, I sent [defendant] the supplemental plea forms for certain sexual offenses detailing all the requirements for parole supervision for life, the ramifications of violating parole supervision for life, his obligations to contact the chief law enforcement officer of his town, or in the alternative, the Superintendent of the State police, once he is released from federal custody, the fact that he will be subject to at least an evaluation by the Adult Diagnostic and Treatment Center, and that he could be held, however unlikely that may be, he does understand that's a possibility.  I've sent him all the paperwork and I've—I've asked him to go through it in—in pretty excruciating detail.

4

> So I don't think [defendant] is under any misapprehension that he's not subject to the reporting and notification requirements of Megan's Law.

During the hearing, the prosecutor asked defendant whether he had discussed PSL with his attorney before pleading guilty the prior two times. Defendant responded, "Yes" and that he understood PSL and its restrictions. The prosecutor also asked if there was anything he did not understand about PSL. Defendant acknowledged he had a copy of the PSL informational document in front of him during the questioning, had signed it, and did not have any questions.

The court informed defendant that, although he was being sentenced to one-year probationary terms, he remained subject to PSL. Defendant confirmed he understood, was satisfied with the services of counsel, and was entering into the plea agreement freely and voluntarily.

In 2019, defendant filed a PCR petition, stating he was not informed about PSL and its details. He asserted he would not have pleaded guilty if he was aware of the full consequences of PSL.

In an oral decision issued October 5, 2020, and an accompanying order, the trial court denied the petition. The court reviewed the transcript of each of

A-2152-20

the plea and sentencing hearings and found defendant was "more than adequately advised" of the terms and conditions of PSL.

Defendant presents a sole issue for our consideration:

> POINT I.
> INEFFECTIVE ASSISTANCE OF COUNSEL IN EXPLAINING THE RAMIFICATIONS OF HIS GUILTY PLEA AND HIS SENTENCING REQUIRES THAT AN EVIDENTIARY HEARING BE HELD.

Defendant contends he would not have entered a guilty plea if he was informed by counsel that he was subject to PSL. We are not persuaded.

The court informed defendant in 2009, 2014, and 2015 that a guilty plea to the sexual assault offense subjected him to PSL. Defendant stated on each occasion that he understood PSL and its consequences. Defendant signed the plea forms during each hearing, which stated he was subject to at least fifteen years of PSL. In 2015, defense counsel informed the court he had extensively discussed PSL with defendant. At no time during any of these proceedings did defendant question the PSL mandate. There is no credible evidence that defendant was unaware of the PSL component of his sentence or its consequences. Defendant failed to demonstrate a prima facie case for PCR.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

6

A-2152-20